IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| SCOTT GAGE, BRAD GAGE, and  <br>TRACEY WRIGHT, Co-Trustees of the  <br>STEVE GAGE REVOCABLE TRUST II,  <br>  <br>Plaintiffs,  <br>  <br>v.  <br>  <br>NATIONWIDE AGRIBUSINESS  <br>INSURANCE COMPANY,  <br>  <br>Defendant. | )  <br>)  <br>)  <br>)  <br>)  <br>)  <br>)  Civil No. 5:22-cv-06101-DGK  <br>)  <br>)  <br>)  <br>)  <br>)  <br>) |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This suit concerns two insurance policies issued to Scott Gage and the Steve Gage Revocable Trust II by Defendant Nationwide Agribusiness Insurance Company ("Nationwide"). In February 2021, Nationwide denied coverage for water damage to the insured property. Plaintiffs Scott Gage, Brad Gage, and Tracey Wright acting as co-trustees of the Steve Gage Revocable Trust II ("Plaintiffs") filed this action asserting claims for breach of contract and vexatious refusal to pay.

Now before the Court is Nationwide's motion for summary judgment. ECF No. 33. For the following reasons, the motion is DENIED.

### Undisputed Material Facts

The Court considers the following undisputed material facts in the light most favorable to Plaintiffs.[1]

---

[1] The Court has limited the facts to those that are undisputed and material to the pending summary judgment motion. The Court has excluded legal conclusions, argument presented as fact, proposed facts that are not properly supported by admissible evidence, and proposed facts that are properly controverted. The Court has included inferences from undisputed material facts. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

Nationwide issued two insurance policies ("the Policies")[2] to Steve Gage (deceased) and the Steve Gage Revocable Trust II. The Policies insured the real property located at 4683 350th Street, Stanberry, Missouri 64489 (the "residence").

The Policies state Nationwide "will pay for direct physical loss of or damage to [the residence] . . . caused by or resulting from any COVERED CAUSES OF LOSS." The Policies' Declarations identified the residence as a "Coverage A – Dwelling" with a "SPECIAL" covered causes of loss designation.

The Policies include the following relevant language:

**D. COVERED CAUSES OF LOSS**

> \* \* \*
>
> **3. COVERED CAUSES OF LOSS – SPECIAL**
> [W]hen Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is excluded in the following paragraphs or in Section E. EXCLUSIONS.
>
>> a. We will not pay for loss or damage caused by or resulting from:
>> \* \* \*
>> 4) Rain, snow, sleet, sand or dust, whether driven by wind or not, to the interior of any building or structure or the property inside a building or structure, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sleet, sand or dust enters. **This does not apply to Coverage A – Dwellings**[.]
>> \* \* \*
>> 22) The following causes of loss to any building, structure or personal property:
>>> a) Wear and tear;
>>> b) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
>>> \* \* \*

---

[2] The first Policy was effective from August 1, 2019, to August 1, 2020 (the "2019 Policy"). The second was effective from August 2, 2020, to August 2, 2021 (the "2020 Policy"). The Court refers to the policies collectively as "the Policies."

2

> > d) Settling, cracking shrinking, bulging or expansion of driveways, sidewalks, swimming pools, spas, pavements, foundations, walls, floors, roofs, ceilings or any other structure or structural component;
>
> * * *
>
> If an excluded cause of loss that is listed in 22)a) through 22)i) [above] results in a "specified cause of loss" . . . we will pay for the loss or damage caused by that "specified cause of loss[.]"
>
> * * *
>
> > b. We will not pay for loss or damage caused by or resulting from any of the following, b.1) through b.3). **But if an excluded cause of loss that is listed in b.1) through b.3) results in a Covered Cause of Loss, we will pay for the loss or damage caused by that covered Cause of Loss.**
> >
> > * * *
> >
> > > 3) **Faulty**, inadequate or defective:
> > > a) Planning, zoning, development, surveying, siting;
> > > b) Design, specifications, **workmanship**, repair, construction, renovation, remodeling, grading, compaction;
> > > c) Materials used in repair, construction, renovation or remodeling; or
> > > d) Maintenance;
> >
> > of any part or all of any property on or off the "insured location".

**L. DEFINITIONS**

> ***
>
> 19. **"Specified causes of loss"** means the following: Fire, lightning, explosion, windstorm or hail, smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; **water damage**; as described in Section D. Covered Causes of Loss.
>
> > * * *
> >
> > c. **Water damage** means accidental discharge or leakage of water or steam as a direct result of the breaking apart of cracking of a plumbing, heating, air conditioning or other system or appliance

>   (other than a sump system including its related equipment and parts), that is located on the insured location and contains water or steam.

*See* Policy, Ex. A at 19, 37, 41, 44–45, 59, ECF No. 34-1.

In June 2020, Plaintiffs submitted a claim under the 2019 Policy for alleged water damages to the residence's hardwood flooring with a reported loss date of June 9, 2020. Nationwide retained Associated Adjusters Network ("AAN") to inspect and determine the scope of the claimed damages. On June 24, 2020, AAN inspected the residence and identified water damage to the laminate flooring in the main level living room that is continuous throughout the main level; water damage to the laminate flooring in the basement family room, which was delaminating; and water damage to the drywall on the exterior wall of the basement and a small stain on the ceiling. Under "Cause and Origin," AAN reported: "Water damage to the interior main level and basement from wind driven rain around an interior/exterior fireplace on the deck." Ex. D, ECF No. 34-4. Based on AAN's report, Nationwide determined a replacement cost value of $1,167.57 for the covered water damage and issued payment for this amount to Plaintiffs on July 9, 2020.

In December 2020, Plaintiffs submitted a claim under the 2020 Policy, alleging additional water damages to the hardwood flooring in other areas of the residence reported to have occurred on December 1, 2020. AAN conducted another inspection of the residence wherein it identified water damage to the engineered flooring on the main level and basement; water damage to the basement ceiling; water damage to the wall and electrical switches below the ceiling stain in the basement; and water damage in the small bedroom and near the storage door. Under "Origin," AAN reported, in part, "[w]ater is infiltrating engineered flooring through Jeld-Wen doors. The exact origin of the water is uncertain." Ex. F, ECF No. 34-6.

In January 2021, Nationwide hired structural engineer Kevin L. Kirchmer, P.E. to inspect

the residence, wherein he identified water damage to the main level and basement hardwood flooring, and the basement ceiling and wall covering. Apart from the west-facing side entry door, he identified defective installation or manufacturing of the residence's doors as the cause of moisture intrusion. More specifically, he reported:

- "For the majority of the affected doors, the moisture intrusions have occurred over time **and are attributable to defective installation or a defect in the manufacture of the doors.** No evidence was observed to indicate the moisture intrusion is the result of storm-related damage or a permanent storm-caused opening."
- **"For the west-facing side entry door, the moisture intrusion is attributable to normal wear and tear of the weather stripping."**[3]
- With respect to the front door, "[g]aps above the water streaks [under the glass panes] indicated the glazing adjacent to the glass panes was either inadequate or absent, indicating moisture intrusion due to an installation defect or a manufacturing defect."
- As for the remaining affected doors (except the west-facing side entry door), he identified the damages resulted from "a defect in the installation of the sill pan or a defect in the manufacture of the door."

Ex. G at 6–8, ECF No. 34-7.

On February 1, 2021, Nationwide sent Plaintiffs a letter denying coverage for their claim, citing coverage exclusions for, *inter alia*, faulty workmanship, wear/tear, and neglect.

In April 2023, Plaintiffs' engineering expert Laurence C. Fehner, PE, inspected the residence and reported the following:

1. The primary leak problem has been moisture intrusion (rain, sleet, snow, and ice) around the edges of the doors and windows at the home.
2. **The lack of sealant joints between dissimilar materials and the flat edges of the trims enabled the water entry.**
3. **There is also potential for leakage at the deck flashings.**
4. This moisture leakage drained downward around the door and window frames resulting in deterioration and rot problems in the sheathing and framing.
5. Some of the water was able to drain down to the floor which resulted in the deterioration and rot of the hardwood floor system.

---

[3] As best the Court can tell, the parties do no dispute that damage caused by wear and tear is excluded under the Policies.

6. This problem is directly related to the original construction of the home and small amounts of water had been leaking in since the house was originally built.
7. Over time, the moisture which has entered the wall cavity behind the EIFS system has slowly caused the deterioration and rot problems.
8. The water intrusion and resulting deterioration problems are not the result of wear and tear, settling, cracking, shrinkage, bulging or expansion of the various components of the home such as the driveway, sidewalks, swimming pool, spa, pavements, foundation walls, floor, roof, ceilings or other structural components.
9. Significant repairs have already been made to the home to stop water intrusion and correct the resultant damages. Some further review and testing is recommended to complete needed and necessary repairs and to verify the EIFS, the adhered stone cladding, the windows and the doors and the deck and its flashings are installed correctly and are weather tight.

Ex. I at 4, ECF No. 34-9. At his deposition, Engineer Fehner opined that these defects have existed since the house was originally constructed.

On July 5, 2023, Nationwide retained a second engineering expert, David Ford, who identified improper detailing and installation of the flashing and waterproofing components of the Exterior Insulation and Finish System ("EIFS") wall, particularly at the south patio deck, as the causes of moisture intrusion. Specifically, he concluded:

1. **The moisture infiltration observed at the property is attributable to improper detailing and installation of the EIFS wall system flashing and waterproofing components**, particularly at the south patio deck area as follows:

    - No drains exist within the patio deck area, drainage of rainwater relies on the slope of the deck.
    - The patio concrete deck appears to slope towards the EIFS exterior walls.
    - No through wall flashing exists at the bottom of the EIFS wall system at the concrete deck transition.
    - The bottom of the EIFS to deck surface does not have a gap.
    - No kickout flashing exists at the patio concrete deck edge to EIFS transition.
    - Window and door rough openings do not have sill pans or threshold pan with end dams.
    - Windows and doors do not have sealant installed at the perimeter jamb and head joints of the opening.

2. The water infiltration related damage to the interior wood flooring and wood framing of the fenestration rough opening is attributed to the improper detailing conditions mentioned above. The rotting and decay of wood elements is based on the periodic presence of moisture, and not from a single exposure event.

Pls.' Ex. 5 at 1, ECF No. 52-5.

Plaintiffs concede some faulty workmanship allowed water intrusion into the residence but argue none of the three professional engineers identified defects, faultiness, or inadequacies in the materials or workmanship used in the construction of the residence's framing, flooring, interior walls, and ceilings.

On July 18, 2022, Plaintiffs filed this two-count lawsuit in state court requesting a declaratory judgment (Count I) and alleging breach of contract and vexatious refusal to pay (Count II). Nationwide removed to this Court. The Court subsequently dismissed Count I at the request of the parties. ECF No. 15. Thus, only Count II remains.

**Summary Judgment Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing this lack of genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive a motion for summary judgment, the nonmoving party must nonetheless substantiate his allegations

with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

**Discussion**

Because this case arises under the Court's diversity jurisdiction, Missouri law governs the Court's construction of the Policy. *See J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007). Under Missouri law, the interpretation of an insurance policy is a question of law, and "[t]he general rules for interpretation of contracts apply to insurance policies." *Progressive Cas. Ins. Co. v. Morton*, 140 F. Supp. 3d 856, 860 (E.D. Mo. 2015). "The key is whether the contract language is ambiguous or unambiguous. Where insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage." *Peters v. Emps. Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993); *see Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. banc 2015) (Where "policy language is clear and unambiguous, . . . [the] Court will not resort to canons of construction[.]"); *Steele v. Shelter Mut. Ins. Co.*, 400 S.W.3d 295, 298 (Mo. banc 2013).

"When language is ambiguous, it is construed against the insurer. An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. A court may not create an ambiguity, however, to distort policy language and enforce a construction it feels is more appropriate." *Taylor*, 457 S.W.3d at 344 (internal citations omitted). "It is the insured's burden to establish coverage under the policy and the insurer's burden to show that an exclusion to coverage applies. Missouri courts strictly construe exclusionary clauses against the insurer." *Elec. Power Sys. Int'l, Inc. v. Zurich Am. Ins. Co.*, 880 F.3d 1007, 1009 (8th Cir. 2018).

Here, the Policies ensure against "Risks of Direct Physical Loss" unless the loss is excluded

by the terms of the Policies. Thus, the Policies appear to contain a broad grant of coverage that is then limited by exclusions. One such exclusion is the faulty workmanship exclusion which states, "[Nationwide] will not pay for loss or damage caused by or resulting from [faulty workmanship]. But if [faulty workmanship] . . . results in a Covered Cause of Loss, [Nationwide] will pay for the loss or damage caused by that Covered Cause of Loss." *See* Policy, Section D.3.b. The Court refers to this last sentence, underlined, as the "ensuing loss provision." The ensuing loss provision creates an exception to the exclusion.

Nationwide argues the Policies exclude coverage for Plaintiffs' claim because (1) faulty workmanship caused the water damage; and (2) the ensuing loss provision does not apply to reinstate coverage because water damage is not a covered cause of loss under the Policies. Plaintiffs concede some faulty workmanship allowed water into the residence but argue water damage is a covered cause of loss under the Policies. Thus, the ensuing loss provision reinstates coverage, and Nationwide must pay for some of Plaintiffs' damages, the extent of which a jury should determine. At bottom, the parties disagree on whether the ensuing loss provision applies. This requires the Court to determine whether water damage is a covered cause of loss under the Policies.

**I.     Water damage is a covered cause of loss under the Policies.**

The Court finds water damage is a covered cause of loss under the plain language of the Policies. As stated earlier, the Policies provide broad coverage for "Risks of Direct Physical Loss unless the loss is excluded in the following [twenty-two] paragraphs or in Section E. EXCLUSIONS." Only one of the following twenty-two paragraphs exclude coverage for water damage caused by rain, snow, or sleet (applicable here) to the inside of a building or to the property within that building ("Paragraph 4"). But the Policies explicitly state Paragraph 4 "does not apply to "Coverage A – Dwellings," i.e., the residence. Thus, none of the twenty-two paragraphs exclude

coverage for Plaintiffs' water damage.  Nothing in the Policies' Section E. EXCLUSIONS exclude coverage either.[4]

Nationwide's arguments to the contrary are unavailing.  *See Elec. Power Sys. Int'l, Inc.*, 880 F.3d at 1009 (stating the insurer bears the burden of proving an exclusion applies).  First, Nationwide argues the Policies are "named peril" policies, so simply because an exclusion does not apply, does not mean water damage is covered under the Policies.  *See Bolinger v. Clarks Fork Mut. Ins. Co.*, 485 S.W.3d 803, 808 (Mo. Ct. App. 2016) (explaining the difference between an "all-risk" policy and a "named peril" policy).  But this argument is conclusory and ignores the plain language of the Policies which clearly states Nationwide will provide coverage *unless the loss is excluded*.  *See Taylor*, 457 S.W.3d at 344 (stating the Court will not distort policy language).

Second, Nationwide argues the Policies' definition of "water damage" excludes coverage in the "covered cause of loss" provisions.  *See* Df.'s Reply at 9, ECF No. 55.  Nationwide's reliance on this definition is misplaced.  The definition Nationwide refers to appears in Section L.19.c. and defines "water damage" as it is used in the definition of "*specified* causes of loss," not "*covered* causes of loss."  The Court finds this distinction important since the Policies treat *specified* and *covered* causes of loss as independent terms throughout the Policies.  *Compare* Section D.3.a. ("If an excluded cause of loss that is listed in 22)a) through 22)i) results in a "specified cause of loss" .

---

[4] Section E.9 of the Policy instead excludes damages caused by the following inapplicable water events:

    a. Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind including storm surge;
    b. Mudslide or mudflow;
    c. Water that backs up from a sewer or drain;
    d. Water that backs up or overflows or is otherwise discharged from a sump, sump entitled pump or related equipment;
    e. Water under the ground surface pressing on, or flowing or seeping through: 1) Foundations, walls, floors, swimming pools, or paved surfaces; 2) Basements, whether paved or not; or 3) Doors, windows or other openings; or
    f. Waterborne material[.]

. . we will pay for the loss or damage caused by that "specified cause of loss[.]"), *with* Section D.3.b. ("But if an excluded cause of loss that is listed in b.1) through b.3) results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss."). Thus, the Court strictly applies the definition of "water damage" in Section L.19.c. only as it relates to "specified causes of loss."

Lastly, the cases cited by Nationwide where faulty workmanship provisions excluded coverage are distinguishable. *BSI Constructors, Inc. v. Hartford Fire Ins. Co.* involved subcontractors who negligently damaged a newly built roof while performing unrelated tasks, causing water to enter and damage the roofing system. 705 F.3d 330, 331 (8th Cir. 2013). The Eighth Circuit determined the faulty workmanship provision excluded coverage for both the faulty product (the roof) and the process (the subcontractors' negligence while completing unrelated tasks). *Id.* at 333. And the ensuing loss provision—which provided coverage for covered property "other" than the roof—could not apply because the insured was *only* seeking coverage for the damaged roof. *Id.* at 334. Additionally, the Court in *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.* was tasked with determining whether the faulty workmanship provision applied exclusively to the construction process itself or extended to negligent repairs/maintenance of completed projects. No. 4:05-CV-1934-DDN, 2013 WL 5101938, at *4–6 (E.D. Mo. Sept. 12, 2013). Neither case is applicable here.

Under the plain language of the Policies, the Court finds water damage is a covered cause of loss and consequentially, the ensuing loss provision applies. Thus, Nationwide is not obligated to cover the faulty workmanship itself but must cover any water damages resulting from the faulty workmanship. *See, e.g.*, *Drury Co. v. Missouri United Sch. Ins. Couns.*, 455 S.W.3d 30, 36–37 (Mo. Ct. App. 2014) (finding insurer liable for ensuing loss from precipitation damages despite the

11

presence of faulty workmanship). Accordingly, summary judgment is denied.

   II.     **Genuine disputes of fact remain.**

Summary judgment is also improper because genuine disputes of fact remain. As Plaintiffs note, the three experts gave differing opinions as to what workmanship was faulty.[5] *See* Pls.' Am. Suggestions in Opp'n at 14–16, ECF No. 52. This necessarily affects what damages Plaintiffs are entitled to. *See Auto Owners Ins. Co. v. Blair Leasing, LLC*, No. 1:19-CV-66-ACL, 2021 WL 2778527, at *13–14 (E.D. Mo. July 2, 2021) (denying summary judgment, in part, where questions of fact remained surrounding the policy's faulty workmanship provision). For instance, Plaintiffs explain that if a jury accepts Engineer Kirchmer's opinion that defective doors enabled the water intrusion, then the Policies would exclude damage to the doors but would cover resulting water damage to the framing, sheathing, sheetrock, siding, paint, and flooring. On the other hand, if a jury accepts Engineer Fehner's opinion that lack of sealant joints, in part, enabled the water intrusion, then the Policies would exclude coverage for installing sealant joints but would cover water damage to the framing, windows, doors, sheathing, sheetrock, siding, paint, and flooring. These questions are for a fact finder to decide, not the Court. Accordingly, summary judgment is denied.

## Conclusion

Because a genuine dispute of material fact as to what damages/materials were faulty or defective remain, Nationwide's motion for summary judgment is DENIED.

   **IT IS SO ORDERED.**

Date: December 5, 2023         /s/ Greg Kays
                               GREG KAYS, JUDGE
                               UNITED STATES DISTRICT COURT

---

[5] The Court bolded some of these differing opinions in the Undisputed Material Facts section.